**Brandon HUTCHISON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SC 85548.**

Supreme Court of Missouri,
En Banc.

Dec. 7, 2004.

**5.** *Id.*

Melinda K. Pendergraph, Office of the Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie M. Morrell, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

MICHAEL A. WOLFF, Judge.

## INTRODUCTION

Brandon Hutchison was convicted of two counts of first-degree murder and sentenced to death. This Court affirmed the convictions on direct appeal.[1] The court overruled Hutchison's Rule 29.15 postconviction motion. On appeal, this Court, without addressing the other issues raised, remanded the postconviction motion for hearing on whether the state failed to reveal a plea agreement with the primary witness against Hutchison.[2] After the hearing on remand, the court again denied

---

1. *State v. Hutchison,* 957 S.W.2d 757 (Mo. banc 1997).

2. *Hutchison v. State,* 59 S.W.3d 494 (Mo. banc 2001).

relief. All issues raised by Hutchison relating to his postconviction motion are now before this Court.

The denial of relief as to the guilt phase of the trial, including the denial of relief on the state's alleged failure to disclose a plea agreement with the primary witness against Hutchison is affirmed.

As to the penalty phase of Hutchison's trial, however, this Court concludes that Hutchison's trial attorneys were ineffective for failing to investigate and present evidence of his impaired intellectual functioning. Counsel have a duty under the United States Constitution to conduct a reasonable investigation and to present evidence of impaired intellectual functioning—evidence that is inherently mitigating—in the penalty phase of a murder trial.

The judgment is affirmed as to the guilt phase of the trial. The judgment is reversed as to the penalty phase of the trial. Pursuant to Rule 84.14, a new penalty phase trial is ordered. The case is remanded.

## BACKGROUND

Hutchison, Michael Salazar and Freddy Lopez were charged with first-degree murder for their participation in the murders of Brian and Ronald Yates after a New Year's Eve party at Lopez's home on December 31, 1995. Salazar shot and severely wounded the Yates brothers at Lopez's home. Salazar, Lopez and Hutchison then transported the victims in the trunk of Lopez's car to another location, where Salazar and Hutchison removed the victims from the trunk and Hutchison fatally shot the victims using Lopez's gun.[3] The bodies were left by the side of the road.

Hutchison and Salazar fled to California where they were apprehended several days later.

Hutchison and Salazar were tried and convicted of first-degree murder in separate trials, and Lopez pled guilty to second-degree murder. Hutchison was tried first and was sentenced to death for his role in the murders. Freddie Lopez was the State's main witness against Hutchison. Salazar was tried after Hutchison and was sentenced to life in prison without parole. Lopez did not testify at Salazar's trial. Lopez was sentenced to ten years in prison.

Hutchison was represented at his trial by two attorneys who had no experience in defending murder cases and who had never tried a capital case. They spent nearly the entire time before trial preparing for the guilt phase and virtually no time preparing for the penalty phase. Hutchison's trial counsel retained only one expert, who had no independent knowledge of Hutchison. Hutchison's parents paid for his trial defense and could not provide extra money for experts and other discovery expenses. Hutchison's attorneys did not investigate Hutchison's life history or obtain any records documenting his troubled background and his mental and emotional deficits.

Before, during and after Hutchison's trial, Lopez's attorney and the prosecutor had discussions about a plea agreement in exchange for Lopez's testimony. After Hutchison's trial, the prosecutor extended a formal offer to Lopez, agreeing to reduce the charges from first-degree to second-degree on each count and ten years for armed criminal action, for a total of 30

---

**3.** An investigator for the public defender's office stated in an affidavit that Salazar admitted during the postconviction investigation that he shot the victims both in the garage and by the side of the road. However, during Hutchison's trial the jury only heard Lopez's testimony that Hutchison shot and killed the victims by the side of the road and the affidavit was not allowed into evidence at Hutchison's postconviction evidentiary hearing.

years. Lopez rejected the offer, and the state prepared to go ahead with a trial and to seek the death penalty against Lopez.

Lopez fired his attorney and hired a well-known criminal defense firm[4] after his sister won a large cash prize in the California lottery. One of Lopez's new criminal case co-counsel contacted an attorney to negotiate a wrongful death settlement with the victims' family. The settlement called for the family to recommend to the state that Lopez receive no more than a ten-year sentence in exchange for a cash payment to the family of $200,000.00 plus $30,000.00 in attorneys' fees. Lopez pled guilty to two counts of second-degree murder. At the plea hearing, sentencing was continued until after the money was deposited into the victims' family's trust account. With the state's consent, and at the recommendation of the Yates family, Lopez was sentenced to two ten-year terms to be served concurrently.

The court overruled Hutchison's Rule 29.15 motion after a lengthy evidentiary hearing on all but two claims. The court did not allow Hutchison to present evidence to support his claims that the State failed to reveal a plea bargain with Lopez during the trial and that Lopez's payment to the victims' family inappropriately resulted in a lenient sentence. After hearing other evidence, the court also denied relief on Hutchison's claim that his trial counsel was ineffective for failing to investigate and present evidence of his impaired intellectual functioning.

On remand, the court again denied relief. The court found that the plea agreements did not violate any of Hutchison's constitutional rights. The court held that the state did not make a formal offer of a

plea until after the trial and that the prosecutor and the court were not involved in the civil settlement in which Lopez paid the victims' family in exchange for the family's recommendation of a lenient sentence.

## THIS APPEAL

### Standard of Review

 "This Court will uphold the findings and conclusions of the motion court unless they are clearly erroneous." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000); Rule 29.15(k). Findings and conclusions are "clearly erroneous" if, after reviewing the entire record, the court has the definite and firm impression that a mistake has been made. *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

### Points on Appeal

Hutchison presents 11 points of error in this appeal. Except for one point regarding penalty phase jury instructions, all of the points can be grouped generally into two main categories: error with regard to Lopez's plea agreements and ineffective assistance of counsel for failing to conduct a reasonable investigation into Hutchison's life history and to present evidence of his impaired intellectual functioning.

### Jury Instructions

 Hutchison claims that his attorneys were ineffective for failing to offer evidence challenging the penalty phase instructions even though they believed the instructions were incomprehensible and, thus, objectionable. Hutchison contends that jurors do not understand penalty phase instructions and that when jurors do not understand the instructions, they are more likely to impose death.

---

4. Hutchison's family members had tried to hire this firm but were referred to the attorneys who represented Hutchison at trial because they could not afford the sizeable retainer.

■ Claims of instructional error are beyond the scope of a Rule 29.15 motion for postconviction relief and are matters for direct appeal. *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993). Moreover, the motion court found that the study relating to jurors' comprehension of Missouri approved death penalty instructions that Hutchison claimed his trial counsel should have offered was discounted by this Court in *State v. Deck*, 994 S.W.2d 527, 542–543 (Mo. banc 1999). The motion court held that counsel cannot be ineffective for failing to present evidence concerning a study that this Court has found to be unpersuasive. The court's conclusion is not clearly erroneous.

### Lopez's Plea Agreements

Hutchison claims that the remand court erred in concluding that:

1) the plea agreement between Lopez and the victims' family did not violate the Missouri Constitution and Hutchison's state and federal constitutional rights;

2) the prosecutor did not mislead the jury by not acknowledging the ongoing plea discussions with Lopez;

3) trial counsel was not ineffective for failing to object to the prosecutor's statements in closing argument that there were no plea deals; and

4) considering Lopez's and Salazar's sentences, Hutchison's sentence is not disproportionate.

*"Justice for Sale?"*

■ "[J]ustice shall be administered without sale, denial or delay." Mo. Const. article I, section 14. Hutchison claims that the state's agreement to a sentencing recommendation in exchange for Lopez making a substantial payment to the victims' family was tantamount to "justice for sale" in violation of the Missouri Constitution and the United States Constitution.[5]

Hutchison asserts that he received the death penalty not because he is the most culpable, but because he was the least able to afford justice and that evidence presented at the remand hearing proved this claim. As previously noted, after Hutchison was convicted, and before Lopez was tried, Lopez pled guilty to second degree murder after reaching an agreement with the victims' family and with a recommendation by the prosecutor for a ten-year sentence. Under the settlement agreement entered into evidence at the hearing, Lopez would pay the victims' family $230,000.00 if: the family recommended to the prosecutor that Lopez receive no more than ten years in prison *and* the judge actually sentenced Lopez to a prison term not to exceed ten years.

On its face, the agreement was contingent on actions of both the prosecutor and the judge in Lopez's case. The prosecutor testified that he did not believe ten years was a just sentence, but he made the recommendation at the family's request, so that they could get the money. The sentencing judge testified that he did not know the specifics of the agreement, but he was aware that there was an agreement that involved a payment to the family. The sentencing judge stated that he went along with the prosecutor's recommendation because it was what the family wanted.

Despite this evidence, the court denied Hutchison's claim and accepted the state's position, characterizing Lopez's payment to the family as a "settlement agreement in a friendly suit." The court denied

5. The parties did not address the issue of whether Hutchison has standing to challenge another defendant's sentence, and there is no need to decide this issue here, as there will be a new sentencing phase trial.

Hutchison's claim of violation of the Missouri Constitution because it found that Hutchison did not prove any involvement by the prosecutor or the court in the civil settlement.

■ While victims may assert a right to be heard at sentencing,[6] the sentencing decision is wholly within the discretion of the judge. A plea agreement may circumscribe the range of a judge's discretion, but the judge retains the prerogative of rejecting the agreement by refusing to accept the plea. Rule 24.02(d). That, however, was not the case with Lopez, whose plea of guilt could have resulted in the maximum punishment under the statute. In this case the judge determined Lopez's sentence within the range of punishment prescribed by statute.

■ The court also denied Hutchison's equal protection claim, finding that Hutchison was not similarly situated to Lopez. The court found that it was significant that Lopez had cooperated with the police and that Lopez did not actually shoot the victims. Hutchison, by contrast, did not cooperate. Lopez testified that Hutchison was the one who fatally shot the victims. The motion court's factual findings in denying Hutchison's equal protection claim are not clearly erroneous.

*The Initial Plea Offer During Trial*

■ Hutchison claims that the jury was misled by Lopez's testimony that the state was not making any deals and the prosecutor's statement at closing argument that Lopez was still charged with first-degree murder and "didn't get out of anything." Lopez's testimony minimized his involvement and portrayed Hutchison as the most culpable. Hutchison's counsel tried to impeach Lopez by questioning him about what he was getting for his testimony. Lopez said his lawyer told him that the prosecutor was not giving any deals, that he was testifying only to clear his conscience and that he *hoped* he would get a deal. The prosecutor did not contradict this testimony, but referred to it in closing argument. Although the prosecutor and Lopez's attorney had been trading offers, and Lopez understood that obtaining a deal depended on the state's satisfaction with his testimony, the court was correct in finding that they had not actually agreed on a plea at the time of Lopez's testimony.

■ As for the prosecutor's statement in closing, although the prosecutor had indicated to Lopez's counsel before and during trial that if Lopez testified favorably for the state the charges could be reduced from first to second-degree murder, there was no actual deal. "The State does not commit prosecutorial misconduct for failing to reveal information that did not exist at the time." *State v. Clay*, 975 S.W.2d 121, 141 (Mo. banc 1998). The prosecutor's conduct came perilously close to fostering the false impression that Lopez would get nothing for his testimony. But it was correct that there was no deal at the time of Lopez's testimony. In fact, Lopez rejected the deal that was offered after Hutchison's trial because he wanted an even lighter sentence. The findings and conclusions of the motion court are not clearly erroneous.

■ Hutchison claims his counsel was ineffective for failing to object at sev-

---

**6.** Article I, section 32.1(2) of the Missouri Constitution grants crime victims the right to be heard at guilty pleas, sentencings, etc. "unless in the determination of the court the interests of justice require otherwise."

Article I, section 32.4 provides that nothing in section 32 shall be construed to authorize a court to set aside or to void a finding of guilt or an acceptance of a plea of guilty in any criminal case.

eral points in the trial, including the prosecutor's statement in closing argument that Lopez would receive no deal. The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial. *State v. McRoberts,* 837 S.W.2d 15, 23 (Mo.App.1992). In arguing ineffectiveness, a defendant must overcome a strong presumption that counsel's performance was sound trial strategy. *State v. Clay,* 975 S.W.2d at 135.

As discussed above, the state did not have a completed agreement with Lopez during Hutchison's trial. Thus, Hutchison's trial counsel cannot be ineffective for failing to object to the prosecutor's statement in closing argument that there was no agreement.

■■■ Hutchison's claim with regard to the prosecutor's statement in argument about the position of the bodies was raised in the direct appeal of his convictions. The Court found that the claim of error was not preserved and that no manifest injustice or miscarriage of justice resulted from the admission of the statement. *State v. Hutchison,* 957 S.W.2d at 764–765. Hutchison's claim with regard to the late endorsement of a penalty phase witness was preserved and raised on direct appeal. The Court found that the trial court did not abuse its discretion by allowing the late endorsement. *Id.* at 764. Finally, the court denied Hutchison's claim that his counsel was ineffective for failing to object when the prosecutor asked Dr. Bland during the penalty phase about his finding that Hutchison was competent to stand trial. The court found that counsel's failure to object was reasonable trial strategy because counsel testified that he did not object because he did not want to appear

to discredit his own witness. This conclusion is not clearly erroneous.

■■■ Hutchison also claims that his trial counsel were ineffective because they did not know how to preserve constitutional error for appellate review. The explanation trial counsel offered was that they made simple objections because they did not want to annoy the jury, and they thought this would be sufficient to preserve federal constitutional claims. Under the circumstances of this case, the court's finding that counsel's failure to object was reasonable trial strategy is not clearly erroneous.

## Proportionality

Hutchison's claims that this Court's proportionality review is inadequate were rejected on direct appeal, and the same arguments have been offered and rejected by this Court in other cases. *See Clay,* 975 S.W.2d at 146.

Hutchison also claims that Lopez's and Salazar's sentences should have been considered as part of this Court's proportionality review pursuant to section 565.035.[7] Hutchison urges this Court to reexamine its holding in *State v. Clay,* 975 S.W.2d 121 (Mo. banc 1998), that "[a] co-actor's plea agreements and convictions for crimes other than first degree murder are not to be considered in the proportionality review of a death sentence." *Id.* at 146. Hutchison notes that the United States Supreme Court has held that co-actor's sentences may be considered in deciding whether a death sentence is disproportionate. *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), and *Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992).

**7.** All statutory references are to RSMo 2000 unless otherwise indicated.

Proportionality review is appropriately done on direct appeal. *State v. Ramsey*, 864 S.W.2d 320, 328 (Mo. banc 1993). There is no need to re-visit the issue here.

### Failure to Investigate Hutchison's Life History and Present Evidence of His Impaired Intellectual Functioning

For a convicted defendant to prevail on a claim of ineffective assistance of counsel, he must show that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 690–691.

Hutchison's counsel were overwhelmed, under-prepared and under-funded by the time they arrived at the penalty phase. They spent most of the available time preparing for the guilt phase of the trial, and as a result, the jury did not hear compelling evidence for mitigation in the penalty phase. Counsel knew that they needed to prepare for the penalty phase, but they left no time to prepare adequately and to present such evidence.

Prevailing professional standards for capital defense work require counsel to "discover *all reasonably available* mitigating evidence ..." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). This includes "medical history, educational history, employment and training history, *family and social history,* prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* at 2537. Section 565.032.3 outlines mitigators of extreme mental or emotional disturbance, extreme distress or domination by another, and substantial impairment of capacity to appreciate the criminality of his conduct or to conform it to the requirements of law.

Hutchison asserts his trial counsel were ineffective for:

1) failing to investigate and present evidence of his background, including school, medical, mental health and jail records and a psychiatrist who treated Hutchison for bipolar disorder, attention deficit hyperactivity disorder and alcoholism when he was a teen in California;

2) failing to adequately investigate his family history and to call family members as witnesses to testify about Hutchison's mental problems during his troubled childhood;

3) failing to provide their expert with background materials and failing to follow up on the expert's findings;

4) failing to call witnesses to testify to Lopez's psychological domination of Hutchison;

5) failing to obtain a continuance to do a more thorough investigation of Hutchison's life history and prepare the mitigation case; and

6) failure of the public defender's office to provide sufficient funds to do a thorough investigation of Hutchison's life history, in the postconviction proceedings.

Hutchison's trial counsel requested a continuance to prepare a life history for penalty phase, including a trip to California, where Hutchison had spent most of his life. Trial counsel maintained that eight months was not enough time to prepare a capital case. The request was denied. Hutchison claims that the trial court abused its discretion in denying the continuance. The motion court found that trial counsel had sufficient time to prepare for

both guilt and penalty phase and misallocated that time so that a continuance was not appropriate. Generally, claims of trial error are not cognizable in a postconviction motion. *State v. Redman,* 916 S.W.2d 787, 793 (Mo. banc 1996).

Hutchison also claims his appellate counsel was ineffective for not raising the issue of the denial of a continuance on appeal. At the motion hearing, Hutchison's appellate counsel stated that it was difficult to win such claims on appeal where the standard is "abuse of discretion" and that it was his general practice not to raise such claims because of the limited chance of success. The motion court found that counsel's decision to "winnow out" claims with little chance of success in favor of stronger points is a reasonable strategy.

■ To support a claim of ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error that would have required reversal had it been asserted and that was so obvious from the record that a competent and effective appellate lawyer would have recognized and asserted it. *Moss v. State,* 10 S.W.3d 508, 514 (Mo. banc 2000). The court's finding that failure to pursue the claim of error with regard to the denial of a continuance is reasonable trial strategy is not clearly erroneous.

■ Hutchison was represented by private attorneys at his trial but he was represented by the public defender's office throughout the postconviction and appellate proceedings. Hutchison claims that his postconviction counsel requested $15,000 from the public defenders' office to investigate his life history but that they provided only about $7,500. Hutchison claims that he was denied due process because the state public defender failed to provide his counsel reasonable and necessary litigation expenses, such as money to investigate witnesses and records located in California where Hutchison, Lopez and Salazar grew up, in violation of Rule 29.16(d).[8]

■ The court denied this claim because claims of ineffective assistance of postconviction counsel are categorically unreviewable. *State v. Hunter,* 840 S.W.2d 850, 871 (Mo. banc 1992). The court went on to note that Hutchison called several experts and many other witnesses during more than a week of testimony during the evidentiary hearing and that postconviction counsel spent over $27,000.00 on expert witness testimony alone in support of Hutchison's postconviction motion. The court was not clearly erroneous in denying this claim.

■ There was evidence in Hutchison's background that his psychological and emotional deficits made him a "follower," not a "leader." The defense theory was that Salazar and Lopez, who had a history of criminal violations and were members of a violent Hispanic gang, were "running herd" over Hutchison. Lopez testified at trial that Hutchison was in control of the situation and made the decision to shoot the victims. Hutchison claims his trial counsel should have presented expert testimony regarding his physical, psychological and emotional deficiencies to rebut Lopez's testimony and explain why he was not likely to have taken control and made the decision to kill the brothers. However, because trial counsel spent all of their time preparing for the guilt phase, they failed to investigate and present testimony in support of this theory. At the evidentiary hearing, five witnesses testified that Lopez

**8.** Rule 29.16(d) provides: "As to any counsel appointed as provided in this Rule 29.16, the state public defender ... shall provide reasonable and necessary litigation expenses."

and Salazar were "gang brothers" and that Lopez controlled Hutchison. Although Hutchison's trial counsel actually spoke to two of these witnesses, counsel failed to elicit potential evidence for mitigation of duress from any of them at trial. The court also heard testimony from expert witnesses about Hutchison's intellectual and emotional deficits that made him particularly susceptible to domination.

To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that:

1) trial counsel knew or should have known of the existence of the witness,

2) the witness could be located through reasonable investigation,

3) the witness would testify, and

4) the witness's testimony would have produced a viable defense.

*State v. Harris*, 870 S.W.2d 798, 817 (Mo. banc 1994).

Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise. *State v. Clay*, 975 S.W.2d at 143.

The court found that this testimony was unnecessary because gang evidence was presented at trial and that "follower" evidence was refuted at trial because the evidence presented—i.e., Lopez's testimony—suggested that Hutchison was in control and made his own decisions. The court also found that any resulting prejudice was overcome by the negative information the state could have elicited from these witnesses so that the presumption of reasonable trial strategy was not overcome. Moreover, trial counsel was not even aware of two of these witnesses, so they could not be ineffective when they did not know their identity or the nature of

their testimony. The court's finding on this point is not clearly erroneous.

Readily available records that trial counsel admitted they did not attempt to obtain would have documented Hutchison's troubled childhood, mental health problems, drug and alcohol addiction, history of sex abuse, attention deficit hyperactivity disorder, learning disabilities, memory problems and social and emotional problems. The court found that the absence of these documents did not prejudice Hutchison because the information in these background documents was cumulative or too remote in time to be relevant and in some cases it was actually detrimental to Hutchison. Therefore, counsel could not be ineffective for failing to investigate and obtain them to be offered into evidence.

"Virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." *Tennard v. Dretke*, — U.S. —, 124 S.Ct. 2562, 2570, 159 L.Ed.2d 384 (2004). Most of the facts that the court cited as detrimental, such as drug use and gun possession, were introduced at some point during the trial. The documents would not have added anything new that was unfavorable, but could have demonstrated to the jury the problems Hutchison had growing up and his intellectual and emotional deficits far more effectively than the rudimentary information actually presented during the penalty phase. *See, Wiggins*, 539 U.S. at 524–525, 123 S.Ct. 2527.

Trial counsel did not follow up on the few leads they had, such as the name of the psychiatrist who treated Hutchison during his teens, Dr. Parrish. Hutchison's trial counsel were on notice that Hutchison had severe psychiatric problems, because their own expert, Dr. Lester Bland, told them about Dr. Parrish. They failed to

contact Dr. Parrish. They knew Hutchison had been hospitalized, but they did not request the records. Dr. Bland told them Hutchison had an IQ of 76 and trouble at school, but they did not get school records. Dr. Bland also told them of emotional and sexual abuse, but they did not follow up. Hutchison's trial counsel did not obtain readily available records showing mental illness, sexual abuse and impaired intellectual functioning. "In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S.Ct. 2527.

The court found that any information Dr. Parrish could have provided would be irrelevant because it was remote in time from the murders, and Dr. Parrish could not provide any opinion regarding Hutchison's state of mind at the time of the crime. However, "[i]mpaired intellectual functioning has mitigating dimension beyond the impact it has on the ability to act deliberately." *Tennard*, —— U.S. at ——, 124 S.Ct. at 2572. Moreover, records from remote time are useful to show that a claim of impaired intellectual functioning is not a recent discovery for the purpose of the defense.

The court also found that part of Dr. Parrish's records would have been detrimental, such as notes about Hutchison skipping school and fighting when he was a teenager. Foregoing mitigation because it contains something harmful is not reasonable when its prejudicial effect may be outweighed by the mitigating value. The information about Hutchison's troubled background and impaired intellectual ability contained in Dr. Parrish's records would have provided significant evidence for mitigation not heard by the jury.

Finally, the court found that Dr. Parrish's notes would not have assisted the jury because they were "illegible."

Hutchison claims that trial counsel were ineffective for failing to adequately investigate his family background and present mitigating testimony from his family members. Hutchison asserts that his family members could have provided stronger mitigating information than the cursory testimony his parents provided at trial. At trial, Hutchison's mother testified only briefly about his learning disability and placement in special education classrooms. His father testified briefly that his son did not deserve death. No other relatives testified. The additional testimony Hutchison's parents and other relatives presented at the evidentiary hearing was not merely cumulative, as the motion court found. One glaring example of trial counsel's failure is that Hutchison's parents did not testify at trial that Hutchison was sexually abused as a child. His parents also did not testify at trial about Hutchison's mental deficits or his family's history of mental illness and alcohol and substance abuse.

Trial counsel talked to Hutchison's brother but did not call him as a witness to testify about their childhood. Hutchison's trial counsel did not talk to Hutchison's aunt, uncle and cousin who were willing to testify about Hutchison's childhood in California.

█ The court found that some of the family members who were not contacted were unfamiliar with Hutchison's *recent* activities so their testimony was not relevant. Contrary to that court's ruling, a defendant need not show a nexus between his mental capacity and the crime to admit such mitigating evidence. *See, Tennard,* —— U.S. at ——, 124 S.Ct. at 2573.

Specifically, the court found that trial counsel were not ineffective for not calling

Hutchison's brother because, as a matter of trial strategy, they decided he was not believable. The court also found that counsel was not ineffective for not presenting testimony regarding childhood sexual abuse because Hutchison's mother wanted it to be kept private. In *Wiggins* the trial counsel failed to investigate or present significant evidence for mitigation in Wiggins background, including his history of sexual abuse. The United States Supreme Court found that failure to discover this evidence was not reasonable professional judgment. *Wiggins,* 539 U.S. at 533–534, 123 S.Ct. 2527.

■■■ The court looked at each family member's testimony and found that it would not have changed the outcome. However, in deciding prejudice from counsel's failure to investigate a client's life history, courts should evaluate the totality of the evidence. *Wiggins,* 539 U.S. at 536, 123 S.Ct. 2527. The question is whether, when all the mitigation evidence is added together, is there a reasonable probability that the outcome would have been different?

An investigation of Hutchison's family history in preparation for his postconviction case revealed that: Hutchison had a low IQ and learning disabilities; he had difficulties in school and was placed in special education classes; Hutchison's mother smoked marijuana with her sons when they were small boys; he turned to alcohol and drugs; his family had a history of alcoholism, substance abuse and mental illness; he was physically and sexually abused as a child; and by the time he was 16, Hutchison was being treated by a psychiatrist, who concluded that he suffered from bipolar disorder and alcoholism. The jury never heard most of this evidence.

Hutchison claims that his trial counsel were ineffective for failing to provide their expert, Dr. Bland, with sufficient background information to conduct an adequate evaluation and for failing to follow up on any information in Dr. Bland's report. Dr. Bland had only the oral history that Hutchison provided. Bland's reliance solely on the background information Hutchison related to him left Dr. Bland open to impeachment at trial. He spent less than three hours with Hutchison, and his report was very short. Bland identified some problems in his report, including borderline intellectual functioning, personality disorder and drug and alcohol abuse, but did not address the effect these deficits had on Hutchison. Trial counsel did not follow up with additional preparation with regard to these problems.

Hutchison claims his trial counsel were ineffective for not asking Dr. Bland to look for mental problems that were mitigating. When trial counsel hired Dr. Bland to evaluate Hutchison, they instructed him to decide whether Hutchison was competent and whether he suffered from a mental disease or defect. Dr. Bland concluded that Hutchison was competent and had no mental disease or defect that would preclude him from being tried for murder. Dr. Bland did not evaluate Hutchison for mitigation.

■■■ There is no Missouri law or case providing guidelines for what would constitute an adequate mental examination for the purposes of providing mitigation evidence and what would not. The court found that Hutchison failed to prove that Dr. Bland's evaluation was inadequate. However, when Dr. Bland testified in the penalty phase, he addressed no statutory mitigators relating to Hutchison's impaired mental functioning. He merely stated that Hutchison's IQ was 76–78 and that Hutchison read at a fourth grade level. He did no independent investigation, gave no interpretations and provided no testimony to assist the jurors in making

an educated determination about Hutchison's mental condition and whether it mitigated the offense. Due process mandates that a defendant facing the death penalty have access to a competent expert who will conduct an appropriate examination and assist in the evaluation, preparation and presentation of evidence for the sentencing phase. *See, Ake v. Oklahoma,* 470 U.S. 68, 84, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

Hutchison claims that trial counsel were ineffective for failing to investigate and present evidence about Hutchison's learning disability, attention deficit hyperactivity disorder, bi-polar disorder, sexual abuse and brain damage and about pharmacological evidence of the effects of drug and alcohol addiction on his intellectual functioning. Trial counsel failed to follow up on even the limited information in Dr. Bland's report, and they did not obtain additional testing.

Hutchison does not claim that the specific experts who testified at the motion hearing should have been called at trial. Indeed, there is no claim that trial counsel knew about these specific experts. Hutchison merely argues that this type of expertise should have been pursued. For example, an evaluation of the damage to Hutchison's intellectual and emotional functioning inflicted by his troubled childhood and substance abuse could have been presented as mitigation. Furthermore, there was no attempt to obtain or introduce expert testimony on neuropsychological evidence of brain damage because trial counsel "did not observe" any manifestations of brain damage. In fact, one expert testified at the evidentiary hearing that Bland's findings should have raised a red flag to evaluate potential brain damage and that Hutchison had suffered two head injuries and had mild brain damage.

Hutchison also does not argue that his counsel were ineffective for failing to shop for a more favorable expert; only that the expert they hired should have conducted a more thorough investigation and evaluation. Although Hutchison's family could not afford these experts, failure to do *any* follow-up cannot, under these circumstances, satisfy *Wiggins'* mandate to discover all "reasonably available mitigating evidence." The evidence, readily obtained and presented by postconviction counsel established that with adequate mental health evaluations, the jury would have heard significant evidence for mitigation.

For the postconviction case, several experts reviewed background material and analyzed and explained Hutchison's problems. Evidence was presented that Hutchison has brain damage in the mild impairment range, impaired mental functioning, and suffers from a learning disorder, attention deficit hyperactivity disorder, bipolar disorder and polysubstance dependence. His functioning places him at the bottom nine percent of the population. His mental age is eight to 12 years. The court found this to be unpersuasive because "most 8–12 year olds know right from wrong." "Impaired intellectual functioning has mitigating dimension beyond the impact it has on the ability to act deliberately." *Tennard,* ——— U.S. at ———, 124 S.Ct. at 2565.

The jury did not hear significant mitigating evidence about Hutchison's impaired mental functioning and did not have the opportunity to consider and give effect to all of the mitigating evidence in the penalty phase. *Id.* at 2566.

Here, as in *Wiggins,* the defendant's claim of ineffective assistance of counsel arises from trial counsel's decision to limit the scope of their investigation into potential mitigating evidence. Counsel in *Wiggins* knew some of the details of the defen-

dant's background from the defendant himself and from a pre-sentence investigation report and department of social service documents, but decided not to investigate further. The United States Supreme Court held that counsel had an obligation to conduct a thorough investigation of the defendant's background and that the cursory investigation from a "narrow set of sources" was unreasonable. *Wiggins,* 539 U.S. at 524, 123 S.Ct. 2527.

The motion court found that trial counsel was not ineffective for failing to investigate and present evidence relating to Hutchison's impaired intellectual functioning, because much of the expert testimony proposed by postconviction counsel would have been "complex and confusing to a jury." The court held that failure to present the evidence offered at the motion hearing was not prejudicial. In fact, evidence of impaired intellectual functioning is inherently mitigating and "obviously evidence that 'might serve as a basis for a sentence less than death.'" *Tennard,* — U.S. at ——, 124 S.Ct. at 2572 quoting *Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1990). That such testimony might be complex is not a sufficient reason for holding that there is no prejudice; expert testimony is often offered precisely because the subject is complex and the testimony is intended to assist the finder of fact. *State Board of Registration for the Healing Arts v. McDonagh,* 123 S.W.3d 146, 158 n. 16 (Mo. banc 2003).

Hutchison's trial counsel did not follow up on any of the information in their own expert's report. They did not investigate Hutchison's medical, educational, family, and social history and did not present available evidence of Hutchison's emotional and intellectual impairment. Without this evidence, the jury sentenced Hutchison to death; had they heard this evidence, there

is a reasonable probability that the result of the proceedings would have been different.

**CONCLUSION**

The judgment is affirmed as to the guilt phase of the trial. The judgment is reversed as to the penalty phase of the trial. Pursuant to Rule 84.14, a new penalty phase trial is ordered. The case is remanded.

WHITE, C.J., STITH and TEITELMAN, JJ., and RAHMEYER, Sp.J., concur.

LIMBAUGH, J., concurs in part and dissents in part in separate opinion filed.

PRICE, J., concurs in opinion of LIMBAUGH, J.

RUSSELL, J., not participating.

STEPHEN N. LIMBAUGH, JR., Judge, concurring in part and dissenting in part.

I concur in that part of the majority opinion affirming the motion court's judgment on the guilt phase of the trial, but I respectfully dissent from that part of the opinion overturning the imposition of the death penalty due to purported ineffective assistance of counsel during penalty phase.

In the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court set the standard for ineffective assistance of counsel, there is an important word of caution:

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [citations omitted] A fair assess-

ment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. In this case, unfortunately, the "distorting effects of hindsight" permeate the majority opinion, which is fraught with one-sided accounts of the record and an undue emphasis on small and mainly cumulative evidentiary points that, even taken together, could not have made a difference in the outcome.

Tellingly, the majority opinion provides only a cursory statement of appellant's penalty phase evidence of mitigation. In fact, four defense witnesses were called—appellant's parents, Lorraine and Bill Hutchison; a friend, Frankie Young; and a clinical psychologist, Dr. Lester Bland—who testified about appellant's family and school background and his social and intellectual impairment. Lorraine Hutchison and Dr. Bland did so at length.

Lorraine Hutchison testified that appellant was a "very loving little boy," that he had a "big heart," that he was close to his family, and that he played on youth league baseball teams. She also testified, however, that he was diagnosed with hyperactivity and attention deficit disorder for which he was prescribed Ritalin, and that he was placed in special education. She explained that they did not have a lot of problems with appellant as a child, but rather "special problems" due to his hyperactivity. She then related that eventually appellant dropped out of school and that he began abusing drugs and alcohol, which necessitated family counseling. Eventually the family moved from their home in Palmdale, California, to Missouri, because Palmdale was a "bad area" and she did not want to raise her younger son there. She added that once in Missouri, appellant entered an apprentice program with his father in the construction trade.

Next, Bill Hutchison testified, confirming his wife's account of his son's background, and reiterating the family's efforts to help their son through his difficulties. He added that he and his wife were caring for their son's children and that he visited their son at every opportunity.

Frankie Young then testified that she and appellant were close friends, that she had known him for over a year, and that appellant had stayed at her residence on occasion. She also related that appellant helped her by babysitting her children and doing household chores. Additionally, she stated that appellant was "part of the family," that he never treated her with disrespect, and that she never felt threatened to have him with her family.

The bulk of the appellant's penalty phase evidence was presented by Dr. Bland, who holds a doctoral degree in clinical psychology and who has extensive experience in evaluating prison inmates at the United States Medical Center for Federal Prisoners in Springfield. Dr. Bland began by stating that he interviewed appellant for two to three hours, taking a complete life history and conducting a psychological evaluation. Dr. Bland related that appellant had been in special education classes throughout elementary school and that he had dropped out of school in the tenth grade. After conducting various intellectual screening tests, Dr. Bland found that appellant had an IQ of 78, and that due to his intellectual deficit, he functioned in the bottom eight percent of the population. He then administered the Wechsler Adult Intelligence Scale Revised, the verbal section, which revealed appellant's IQ to be 76. After administering another test, he found that appellant

performed at the fourth-grade level of reading ability. Dr. Bland then added that his personal, clinical observations of appellant were consistent with the test results.

Dr. Bland also testified about appellant's history with alcohol and drug use including an overdose of methamphetamine and appellant's use of alcohol and drugs the night of the murders. He also related appellant's version of the crime, including appellant's assertion that he did not kill the Yates, and appellant's fear of his co-defendants. In conclusion, Dr. Bland testified that appellant was competent to stand trial and that he did understand the charges against him, but that appellant suffered from "borderline intellectual functioning and personality disorder, not otherwise specified."

Dr. Bland's written report was also admitted into evidence. This included appellant's account of his family life, and his express comment that he had a good relationship with his mother and father. The report also reviewed appellant's time in special education and his problems in school, as well as the diagnosis of hyperactivity and an additional diagnosis that he was "manic depressant." Appellant also reported being sexually molested by an uncle at the age of 11. The report also discussed appellant's addiction to drugs and alcohol, his treatment with a social worker and psychiatrist, and his acknowledgment that he was not compliant with drug treatment. The report also discussed appellant's two children and his common law wife, and his efforts to get a job.

In sum, appellant's penalty phase evidence in mitigation was extensive and comprehensive, and counsel painted appellant in the best light possible by highlighting his redeeming qualities and by attempting to garner sympathy by focusing on his many difficulties as a child and young adult. The majority's conclusion that counsel "did not investigate Hutchison's medical, educational, family, and social history and did not present available evidence of Hutchison's emotional and intellectual impairment" is a gross mischaracterization of the record.

Finally, it bears mention that the majority's repeated reliance on the holdings of *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) overlooks the facts of that case. In *Wiggins*, counsel elected to focus their efforts in penalty phase by "retrying the factual case," rather than introducing evidence in mitigation, except to show that the defendant had no prior convictions. *Id.* at 2533, 2543, 123 S.Ct. 2527. Counsel did not even inquire about defendant's life history and social history, and as a result was wholly unaware of the fact that defendant had been subjected to repeated instances of sexual abuse and molestation. *Id.* at 2541, 123 S.Ct. 2527. The gist of the opinion, of course, is that counsel could not have made a reasonable strategic choice to forego evidence in mitigation without having conducted a reasonable investigation. *Id.* at 2543, 123 S.Ct. 2527. In the case at hand, though, as the record shows, counsel for Hutchison made that reasonable investigation.

For the foregoing reasons, I would hold that there was no ineffective assistance of counsel in either phase of the trial and affirm the motion court's judgment in all respects.