**Ryan FERGUSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 71264.**

Missouri Court of Appeals, Western District.

Aug. 31, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2010.

Application for Transfer Denied Dec. 16, 2010.

Samuel Henderson and Kathleen Zellner, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Ryan Ferguson appeals the circuit court's judgment denying his motion for post-conviction relief. After a jury trial, Ferguson was convicted in Boone County Circuit Court of one count of felony murder in the second degree, Section 565.021.1(2),[1] and one count of robbery in the first degree, Section 569.020.

Because the findings and the conclusions of the motion court, which denied Ferguson's post-conviction relief motion, are not clearly erroneous, we affirm. Ferguson further filed with this Court a Motion To Remand Based on Newly Discovered Evidence. For the reasons set forth herein, this Motion is denied.

## Factual Background[2]

■ On October 31, 2001, Chuck Erickson, a seventeen-year-old high school junior, attended a party at night at his friend's house in Columbia, Missouri. The police broke up the party, and as Erickson was leaving the party, he ran into Ferguson who was just driving up to the house. Ferguson, who was also a seventeen-year-old high school junior, told Erickson to get in his car, and the two drove off. They made plans to meet with Ferguson's sister at By George's, a club in downtown Columbia, Missouri.

Although underage, Ferguson's sister had arranged for them to "borrow" other people's I.D.s so they could enter the club. Once in the club, Ferguson bought a few mixed drinks for Erickson and himself. Around 1:00 a.m. Ferguson and Erickson ran out of money so they left the club.

Once outside, they went to Ferguson's vehicle. There, Ferguson told Erickson that he did not want to go home and that they should find something else to do. Ferguson suggested that they rob someone so they could get more beer money and stay out later. Erickson agreed. They exited Ferguson's vehicle, and Ferguson got a tire tool out of his trunk to use in the robbery. They then walked downtown to find someone to rob. They eventually walked to the Columbia Tribune Building where they saw the victim leaving the building.

Ferguson and Erickson went down an alley and hid behind a dumpster. They observed as the victim reached his vehicle in the Tribune parking lot and opened his front door. As he was shuffling some papers, Erickson and Ferguson ran up behind him as he was facing his vehicle,

---

1. All statutory citations are to RSMo 2000, as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

2. The facts are recited in a light most favorable to the verdict. *State v. Rutter,* 93 S.W.3d 714, 720 (Mo. banc 2002).

and Erickson hit him with the tire tool. Erickson repeatedly hit him with the tire tool. The victim eventually fell to the ground, where he laid motionless. Erickson dropped the tire tool near the victim. Ferguson went over to the victim and took the victim's belt off and strangled him with it.

During the assault, a custodian at the Tribune Building, Shawana Ornt, had exited the building to smoke a cigarette. She observed what was happening and went back to the building to get a co-worker, Jerry Trump. While that was occurring, Ferguson reached down and searched the victim's pockets and took his watch and car keys. Erickson grabbed the tire tool and the belt. Trump exited the building and saw the victim on the ground. He called out, "I see you there. Who's out there." Erickson responded that the victim was hurt. Erickson and Ferguson then left the scene. Trump went over to the victim's body and told Ornt to call 911.

The police were unable to develop any leads immediately after the murder, based primarily on the fact that little forensic evidence was left at the scene of the crime.

Eventually, Ferguson and Erickson went to separate colleges. Erickson stayed near Columbia for college, and Ferguson moved to Kansas City to attend college. At a New Year's Eve party in 2003, Erickson confronted Ferguson about his recollection of the murder. Ferguson told him that they did not murder the victim. Ferguson threatened to kill Erickson if he went to the police with his story. Soon after, Erickson disclosed what he believed to be his involvement in the murder to his friends, Nick Gilpin and Art Figueroa. Gilpin contacted the Columbia Police Department. On March 10, 2004, the police contacted Erickson, and he went to the Columbia Police Department where he confessed to his involvement in the murder and robbery. He was eventually arrested and charged.

On March 10, 2004, the police drove to Kansas City, Missouri, where they arrested Ferguson, who was later charged with the class A felony of murder in the first degree, in violation of § 565.020 and the class A felony of robbery in the first degree, in violation of § 569.020. Erickson pled guilty to first-degree robbery, in violation of § 569.020, second-degree murder in violation of § 565.021.1(2), and armed criminal action, in violation of § 571.015. In exchange for a lesser sentence, Erickson agreed to testify against the appellant.

Ferguson's case proceeded to a jury trial on October 14, 2005. The State called Erickson to the stand; he testified that he and Ferguson robbed and murdered the victim.

On October 18, 2005, the jury returned verdicts against Ferguson finding him guilty of felony murder in the second degree, in violation of § 565.021.1(2), and robbery in the first degree, in violation of § 569.020. Ferguson filed a motion for a new trial, which the trial court overruled. On December 12, 2005, the trial court entered judgment against the appellant sentencing him to consecutive terms of thirty years on Count I and ten years on Count II, to be served in the Missouri Department of Corrections.

This Court affirmed Mr. Ferguson's convictions and sentences on June 26, 2007. *State v. Ferguson*, 229 S.W.3d 612, 614 (Mo.App. W.D.2007).

On November 14, 2007, Ferguson filed a *pro se* motion for post-conviction relief, which was subsequently amended by counsel. An extensive evidentiary hearing was held on the motion on July 16 to July 18, 2008.

On June 12, 2009, the motion court issued its Findings of Fact, Conclusions of

Law, and Judgment, which denied Ferguson's post-conviction relief motion.

## Motion to Remand Based Upon Newly Discovered Evidence

■ After the motion court denied Ferguson's post-conviction relief motion in its June 2009 judgment (and while his appeal of that judgment was pending in this Court), Ferguson filed with this Court a Motion to Remand Based Upon Newly Discovered Evidence (Remand Motion) in February 2010. The basis of the Remand Motion is that Ferguson's co-defendant, Charles Erickson, has provided a sworn statement (written and videotaped) that he alone robbed and murdered Kent Heitholt without any involvement of Ferguson. Because he argues that this newly discovered evidence demonstrates that his conviction rests solely on perjured testimony, Ferguson requests that this Court stay the pending appeal (WD71264) and remand the case to the trial court so that the new evidence provided by Erickson can be considered and a decision rendered by the trial court as to whether a new trial is warranted.[3]

We must reject Ferguson's Remand Motion because Missouri law is clear that he is not entitled to file another motion for new trial at this time. Even when taking all of the averments in his Remand Motion as true, this Court is unable to grant Ferguson the relief that he requests. Ferguson argues that because Erickson recanted his trial testimony after his post-conviction relief motion was filed and ruled upon, that

this somehow confers upon him a unique right to have this matter remanded to the circuit court so that he can file another motion for new trial. We disagree.

■ Critically, had Ferguson brought this claim of newly discovered evidence in a timely fashion in his post conviction relief action, the motion court would still have been precluded from reviewing the substance of this claim.[4] It is a well-established principle that "Missouri's post-conviction relief rules are not a proper vehicle for the examination of claims of newly discovered evidence." *Wilson v. State*, 813 S.W.2d 833, 834 (Mo. banc 1991); *see also State v. Ferguson*, 20 S.W.3d 485, 505 (Mo. banc 2000). "The sole purpose of this post-conviction proceeding is to determine whether the proceedings that led to [Ferguson's] conviction were violative of any constitutional requirements or if the judgment of conviction is otherwise void." *Wilson*, 813 S.W.2d at 834. "This proceeding is not the proper vehicle for relitigating [Ferguson's] guilt or innocence." *Id.* "Newly discovered evidence, if available, may better serve [Ferguson] in a Petition for a Writ of Habeas Corpus under Rule 91, . . . or in a request for a pardon from the governor under the Missouri Constitution." *Id.* at 834–35.

■ While "[n]ewly-discovered evidence is not cognizable in a post-conviction action," an exception is allowed when it is later discovered that "the state knowingly used perjured testimony which is cognizable in a post-conviction action." *State v.*

---

3. Ferguson makes clear that in filing the Remand Motion he is not proceeding pursuant to Rule 29.15, but rather is asking this Court to stay the 29.15 appeal so that a motion for a new trial may be filed and heard by the trial court.

4. Because Ferguson failed to include this claim of newly discovered evidence in his

amended 29.15 motion, this Court cannot delve into the merits of any such claim in the instant appeal. "Appellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k).

*Cummings,* 838 S.W.2d 4, 7 (Mo.App. W.D.1992); *see also DeClue v. State,* 579 S.W.2d 158, 159 (Mo.App. E.D.1979) ("Allegations claiming the conviction is based upon perjured testimony which defendant contends was known to the state are controlled by a different standard."). Ferguson does allege in a conclusory fashion in his briefing on the motion that, at trial, the State presented Erickson's testimony knowing it was perjury and convicted Ferguson based on that perjury. "To prevail on this theory, [Ferguson] must show (1) the witness' testimony was false; (2) the state knew it was false; and (3) the conviction was obtained as a result of the perjured testimony." *Cummings,* 838 S.W.2d at 7.

"'In order to show perjury entitling him to post-conviction relief, the appellant must [also] prove that the witnesses' trial testimony was false and that *the prosecution used the testimony knowing it to be false* and that the conviction was obtained because of the perjured testimony.'" *DeClue,* 579 S.W.2d at 159 (emphasis added) (quoting *Voegtlin v. State,* 546 S.W.2d 40, 41 (Mo.App.1977)); *see also Cummings,* 838 S.W.2d at 7 ("Cummings failed to establish that the prosecutor knew of Coonce's [perjured] testimony"). Because Ferguson provides no basis, other than his bare allegation, that the prosecution knew that Erickson perjured himself during Ferguson's trial, we must deny this claim

of newly discovered evidence as a basis for relief in this post-conviction proceeding.[5]

Perhaps in acknowledgment that a newly discovered evidence claim cannot be brought in a Rule 29.1.5 proceeding, Ferguson argues that the instant motion is not proceeding pursuant to Rule 29.15, but instead, he is asking this Court to stay the 29.15 appeal so that a motion for new trial may be filed and heard by the trial court. In light of the fact that he was convicted in October 2005, Ferguson's motion is not within the time limits for filing a motion for a new trial pursuant to Rule 29.11(b) because that limit is twenty-five days after the verdict. *State v. Terry,* 304 S.W.3d 105, 108 (Mo. banc 2010). Nonetheless, Ferguson asserts that his motion to remand falls within an extremely limited exception to Rule 29.11, which permits a remand for newly discovered evidence as recently outlined by the Missouri Supreme Court in *Terry.* We disagree.

"Once the time for filing a motion for a new trial has passed, the Missouri rules have no provision for the granting of a new trial based on newly discovered evidence even if the evidence is available prior to sentencing." *Id.* at 109. "However there is authority for an appellate court, in a proper case, to grant a motion to remand a case to the trial court to enable an appellant to move for a new trial based on newly

---

5. Ferguson alleges that Erickson's "new sworn statement ... related how he accused Ferguson to satisfy the police" and "pacify the police and prosecution." But Ferguson alleges that only one police officer was aware of the alleged falsity of Erickson's statements, and this was when Erickson initially "began to admit the strangling the victim himself, the officer did not want to hear that he might have done it." Again, even when assuming these allegations are true, we fail to ascertain how they demonstrate that the *prosecutor* was or should have been aware that Erickson had *perjured* himself at Ferguson's trial. More-

over, Ferguson's argument fails to recognize that there is a categorical difference in the police using investigative techniques in order to probe and test the veracity of a witness's statement and, instead, aiding and abetting a witness in perjuring themselves. *See* Section 575.040.1 (To convict one of perjury, the state must prove beyond a reasonable doubt that the defendant "with the purpose to deceive, ... knowingly testifies falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public or other officer authorized to administer oaths.").

discovered evidence, after the taking of an appeal." *State v. Mooney*, 670 S.W.2d 510, 515 (Mo.App. E.D.1984). *Mooney* held specifically the following:

"In the absence of any rule or statute relative to the situation we have in this case, i.e. where the only witness who testified to the essential factual elements of the crime of child molestation has allegedly recanted and knowledge of the witness's recantation did not come to appellant's attention until after appellant was sentenced, and too late to be preserved for appellate review in a timely filed motion for new trial, *we are of the opinion that we have the inherent power to prevent miscarriages of justice in a proper case by remanding the case to the trial court with instructions that the appellant be permitted to file a motion for new trial upon the grounds of newly discovered evidence.*

*Id.* at 515–16 (emphasis added).

The Supreme Court of Missouri recently held in *Terry* that "[a] review of the post-*Mooney* case law indicates that courts have interpreted *Mooney* to stand for the proposition that a remand to the trial court so an accused can file a motion for a new trial on the ground of newly discovered evidence is only appropriate in 'exceptional circumstances' when the newly discovered evidence will exonerate the accused." *Terry*, 304 S.W.3d at 110. "This Court agrees with *Mooney* that an appellate court has

the 'inherent power to prevent miscarriages of justice' and … that it is the Court's responsibility to avoid a 'perversion of justice.' " *Id.* "An appellate court will exercise this power in its discretion." *Id.* at 109.

But Ferguson ignores that both *Terry* and *Mooney* were cases that were pending on *direct* appeal when the evidence in question was discovered, as opposed to the instant case where Ferguson's criminal conviction was finalized in 2007 and the instant motion wasn't filed until 2010. Ferguson cites no case law that would support the conclusion that this Court has the authority to remand a matter during a post-conviction relief appeal. The Eastern District has specifically held that the *Mooney* principles do not apply where the direct appeal is final. *Clemmons v. State*, 795 S.W.2d 414, 418 n. 4 (Mo.App. E.D. 1990) (citing *State v. Warden*, 753 S.W.2d 63 (Mo.App. E.D.1988)).[6]

What Ferguson asks this Court to do is allow him to raise a claim on remand that he would *not* have been allowed to raise in a timely filed post-conviction relief claim. Because it is undisputed that a claim of newly discovered evidence is not cognizable in a Rule 29.15 motion, this Court would therefore be creating a novel avenue for relief for Ferguson during a post-conviction appeal that had previously been foreclosed to countless prior defendants. *Ferguson*, 20 S.W.3d at 505. Our rules

**6.** Ferguson cites to our holding of *McQuary v. State* in attempt to support his argument that we are empowered to remand this matter for him to file a motion for new trial at this juncture. 241 S.W.3d 446, 454 (Mo.App. W.D.2007). But the defendant in *McQuary* raised an issue of juror misconduct originally on *direct* appeal, and we found that McQuary subsequently "offered sufficient evidence at his 29.15 hearing to support a finding that his constitutional right to a fair and impartial jury was violated at trial." *Id.* "Apparently believing that it lacked authority to decide the question, the motion court made no findings that would resolve that issue. On remand, the motion court will have the opportunity to make such findings, and-of particular significance to our analysis-will be the first court to address the fact questions at the heart of this appeal." *Id.* Of course, *McQuary* is of no assistance to Ferguson because (1) he did not raise this claim on direct appeal, and (2) the motion court could not have erred in failing to make findings and conclusions on this claim because it was not raised in Ferguson's Rule 29.15 motion.

and procedures are designed to "... enforce justice, vindicate right in human relations, and cause the cohesion of civilized society which would dissolve unless united by uniform and impartial laws, both of which qualities would instantly vanish if the rule established for all cases should be varied when applied to one case differing from all others only in a sentimental appeal." *Wofford v. Martin*, 183 S.W. 603, 605 (Mo.1916).

Finally, while Ferguson relies heavily on the Supreme Court of Missouri's most recent holding in this matter, *Terry*, to support his argument that this cause should be remanded to the motion court, we believe it illustrates precisely why we must deny Ferguson's motion. 304 S.W.3d at 107. In *Terry*, a seventeen year old defendant was convicted of statutory rape charges based largely on the "victim's" testimony that defendant impregnated her. *Id.* After a DNA test of the newborn baby confirmed that this was not the defendant's child, defendant filed a motion to remand while the case was pending on *direct* appeal, which argued that he was convicted on the basis of perjured testimony by the victim. *Id.* at 108.

But in granting the motion in *Terry*, the Missouri Supreme Court highlighted why similar relief is not available to Ferguson. The Missouri rules have no provision for the granting of a new trial based on newly discovered evidence, so the Court relied heavily on Rule 33(b)(1) of the Federal Rules of Criminal Procedure and the fact that the Federal Rule allows "for a motion for a new trial based on newly discovered evidence to be filed within three years of the verdict." *Id.* at 109 n. 7. Ferguson ignores the fact that his motion was filed over *four* years after the verdict was entered in this case, so we would also be obliged to deny his motion to remand pursuant to the Federal Rules of Criminal Procedure. *United States v. McDonald*, 326 Fed.Appx. 880, 883 (6th Cir.2009) ("Rule 33 requires such motions to be filed within certain time requirements; if based upon newly discovered evidence, the motion must be filed 'within 3 years after the verdict or finding of guilty,'" and because defendant failed to file such a timely motion he was "left with only one possible avenue to challenge his 1996 conviction: his Congressionally-enacted right to collaterally attack the conviction under 28 U.S.C. § 2255 [writ of habeas corpus].").

■ Ferguson is not without recourse to have this newly discovered evidence heard in a Missouri court of law. Habeas corpus relief is available "where petitioner can demonstrate 'manifest injustice or miscarriage of justice' by showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *State ex rel. Verweire v. Moore*, 211 S.W.3d 89, 91 (Mo. banc 2006) (quoting *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc 2000)). "[I]n nearly all cases, manifest injustice or miscarriage of justice will require a showing of newly discovered evidence of actual innocence.'" *Id.* at 93. "Justice requires that this Court consider all available evidence uncovered following Engel's trial that may impact his entitlement to habeas relief," and under "the 'cause and prejudice' standard ... [h]e also must establish that he is entitled to habeas review because this Court's failure to review his claims would prejudice him." *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 126 (Mo. banc 2010). Habeas corpus relief may even be available in rare circumstances where a freestanding claim of actual innocence is brought independent of any constitutional violation at trial. *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 547–548 (Mo. banc 2003).

It should be noted that Ferguson alternatively requests that we consider his remand motion as a petition for habeas corpus and that we remand the case to the trial court to hear his claims of newly discovered evidence. However, a petition for habeas corpus, on behalf of a person in state custody, is required to be filed in the county where the person is being held or if good cause is shown the petition may be filed directly with a higher court. Rule 91.02. In either case, the petition must be filed in the county or the appellate court district in which the person is held in custody. There is nothing in the record to establish in which county Ferguson is currently incarcerated or even if the county in which he is being held is within the boundaries of the Western District of this Court. Though we are mindful of Fergusons's desire to expedite disposition of his claims, we are unable to exercise authority over a matter without a basis in the record establishing that we have the authority to do so. Certainly, in this case, the trial court is not the proper venue for the relief Ferguson seeks because there is no state correctional facility in Boone County and therefore Ferguson cannot be currently incarcerated in that venue. *Brown v. State*, 66 S.W.3d 721, 732 n. 8 (Mo. banc 2002).

Accordingly, for all of the aforementioned reasons, Ferguson's Motion To Remand Based Upon Newly Discovered Evidence is denied.

### Rule 29.15 Standard of Review

In determining whether the motion court erred in denying Ferguson's motion for post-conviction relief, our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous."

7. Unless otherwise indicated, rule citations are to the Missouri Rules of Criminal Proce-

Rule 29.15(k).[7] Error is clear when the record definitely and firmly indicates that the circuit court made a mistake. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995).

### Analysis

In Point One, Ferguson argues that the motion court erred in denying his motion for post-conviction relief in light of the fact that "he was denied a fair trial because the State failed to disclose to the defense Clarence Mabon's statements regarding his involvement in Mr. Heitholt's murder."

"In *Brady [v. State of Maryland]*, the United States Supreme Court held that the State violates due process if it suppresses evidence that is favorable to the accused and material to either the guilt phase or the penalty phase. 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)." *Gill v. State*, 300 S.W.3d 225, 231 (Mo. banc 2009). "The State violates due process regardless of whether it withheld the evidence in good faith or in bad faith." *Id.* "'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Merriweather v. State*, 294 S.W.3d 52, 54 (Mo. banc 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). "'According to *Brady*, due process requires the prosecution to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment.'" *Id.* (quoting *State v. Goodwin*, 43

dure (2010).

S.W.3d 805, 812 (Mo. banc 2001)). "In *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court held that 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' " *Id.* at 54–55.

Here, Ferguson argues that because the State failed to disclose information that Ronald Hudson stated that Clarence Mabon had "confessed to involvement in the murder" in question, that the motion court erred in denying his post-conviction relief motion. In denying this claim, the motion court made the following relevant findings of fact and conclusions of law:

> Movant claims that the State failed to disclose evidence that an individual named Ronald Hudson, in November of 2002 (long before Movant and Erickson were arrested or even considered suspects), told officers that an individual by the name of Clarence Mabon, an African–American man, had told Hudson that he was involved in the murder of Keith Heitholt, the victim in this case. At the evidentiary hearing, Ronald Hudson testified that he had spoken to Detective Brian Liebhart of the Columbia Police Department in an attempt to obtain a plea bargain in an unrelated robbery case. Hudson testified that when he met with his attorney Rob Fleming and Detective Leibhart, he told Leibhart that, at some point after Ken Heitholt was killed, he saw Clarence Mabon, an African–American man, who stated that he had been involved in the murder of Kent Heitholt. According to Hudson, Mabon claimed that the sketch that had been distributed to the media was not the real killer.... According to Hudson, he received no plea agreement (or leniency) for this information. Hudson admitted that he attempted to give various pieces of information to police regarding various crimes in an attempt to get a better plea deal for his robbery case.

> \*     \*     \*

> Movant has failed to establish that this evidence was material for his defense. This Court finds that although Charlie Rogers, Movant's lead trial counsel, stated that he was unaware of this information, he also stated that he did not believe that this evidence would have changed the defense presented at trial. This Court finds that the police interviewed multiple "false" leads (which were disclosed to the defense). This Court finds that the defense at trial was not that a specific other person did it but only that Movant and Erickson were not the perpetrators. This Court finds that the evidence presented by Movant in support of this claim would not have been admissible at trial. Ronald Hudson's testimony was hearsay and would not have been admissible. This Court finds Ronald Hudson's testimony not credible. The evidence at the hearing demonstrated that Hudson had multiple prior convictions, was a person who was grasping at straws to get a better deal from the State, and that his story did not make any sense. Mr. Hudson's attorney Rob Fleming testified that he had sent an email to the prosecutor, Mark Morasch, stating that Hudson was grasping at the straws and he did not believe his "information" was accurate.... Moreover, Movant, the party with the burden in his case, presented no additional evidence or testimony to show that Mabon was involved in the Heitholt murder that would have been admissible evidence at trial to support his defense or an alternate theory of innocence. Hudson's testimony was not admissible as it was hearsay; Movant

presented no other evidence that Mabon was somehow involved in the murder ... [T]he statements by Ronald Hudson would not have provided [Movant] with plausible and persuasive evidence to support his theory of innocence nor wouldn't have enabled him to present a plausible, different theory of innocence.

Even if the State's failure to disclose this information constituted a *Brady* violation, Ferguson's inability to demonstrate prejudice from this alleged *Brady* violation is dispositive of this Point Relied On. Simply put, Ferguson has failed to demonstrate that the motion court's above findings and conclusions were somehow in error.

■ Ferguson fails to demonstrate that the motion court's conclusion, that Hudson's testimony was not credible, was not supported by the evidentiary record. "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness...." *Hurst v. State,* 301 S.W.3d 112, 117 (Mo.App. E.D.2010).

Ferguson argues on appeal that the consequence of this nondisclosure is that it prevented Ferguson from carefully investigating potential leads including Hudson, Mabon's ex-girlfriend Yolanda, as well as Hudson's girlfriend Felicia and that there may have been some physical evidence implicating Mabon that they could have uncovered. What this argument ignores is that the motion court found that Hudson's entire story was not credible, so any subsequent investigation would have been futile because this was a false and phony lead.

Ferguson relies heavily on this Court's holding in *State v. Parker* to support his argument that he is entitled to relief on appeal for this alleged *Brady* violation. 198 S.W.3d 178, 181 (Mo.App. W.D.2006).

*Parker* does not support Ferguson's argument. In *Parker,* this Court simply remanded the case to the circuit court for it to convene a hearing to consider Parker's *Brady* claims to determine whether or not the prosecuting attorney suppressed *Brady* material and, if the circuit court determined that the prosecuting attorney did suppress *Brady* material, to determine whether or not the statements would have been favorable to Parker's defense. *Id.* But here, the motion court *already* had such an evidentiary hearing and detailed its reasons for answering the aforementioned questions against Ferguson. Because he has failed to demonstrate that the findings and conclusions regarding this claim are somehow clearly erroneous, Ferguson has no basis for relief pursuant to this *Brady* claim on appeal.

■ Finally, Ferguson argues that he could have utilized Hudson's statement for cross-examination of law enforcement at trial regarding other leads that were not followed up on, but does not dispute the motion court's detailed findings and conclusions that Hudson's statements were inadmissible hearsay. When the undisclosed material in question is inadmissible at trial, a *Brady* violation cannot occur in light of the fact that the material in question could have had no direct effect on the outcome of trial, because defendant could not have mentioned them either during argument or while questioning witnesses. *Wood v. Bartholomew,* 516 U.S. 1, 6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995). Accordingly, we fail to understand how this inadmissible hearsay would have been any benefit to Ferguson. Therefore, we must deny this *Brady* claim.

Point One is denied.

■ In Point Two, Ferguson argues that the motion court erred in denying his motion for post-conviction relief because

the State failed to disclose to the defense Shawana Ornt's exculpatory statement that neither Ryan Ferguson nor Charles Erickson was the man she saw near Kent Heitholt's body the night of the murder. Because Ferguson raises a *Brady* claim in this Point Relied On that is governed by the same legal principles outlined previously in detail above, we will not duplicate those principles herein.

We must deny Ferguson's second *Brady* claim for a similar reason as we denied his first *Brady* claim, namely that the motion court made the following detailed findings that the evidence in question was not credible and thus was not a basis for a meritorious *Brady* claim:

> This Court finds Ms. Ornt's testimony is not credible. Ms. Ornt's testimony that she waited over two years to tell anyone that two "innocent" people went to prison for the rest of their lives and that she lied during her deposition to the one person who was assisting Movant, is incredulous. This Court finds Kevin Crane and Bill Haws' testimony to be credible. This Court finds that no Brady violation occurred because no statements were made by Ms. Ornt that Movant and Erickson were not involved. This Claim is denied.

At the hearing on Ferguson's post-conviction motion, Shawana Ornt testified that she told the prosecutor's office (specifically the lead prosecutor in this case, Kevin Crane) that neither Ryan Ferguson nor Charles Erickson were the men she saw in the parking lot the evening the victim was murdered. Of course, were Ornt's testimony to be believed, this evidence would be material because Ornt was one of the only individuals in the area immediately after the victim's murder who had the opportunity to identify who may have committed the crimes in question.[8] At Ferguson's trial, Ornt testified to the fact that she was unable to make a positive identification of any suspects developed by the police in the case, and while she was able to provide some identifying characteristics of who she saw (two young white males), Ornt did not give an opinion as to whether *Ferguson* was one of the individuals she in fact saw.

While Ornt testified at the post-conviction relief hearing that she told Crane that Ferguson and Erickson were not the individuals she saw on the morning in question, the motion court heard evidence that directly contradicted and undermined Ornt's testimony. "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness. . . ." *Hurst,* 301 S.W.3d at 117. Specifically, Kevin Crane testified that he met with Ornt two or three times in his capacity as the lead prosecutor on the Ferguson case, and at that time, Ornt told him that she couldn't say whether Ferguson and Erickson were the people she saw or not. The motion court was free to believe Crane's testimony and disbelieve Ornt's testimony. Indeed, the motion court was also free to rely on the fact that Ornt testified at both a deposition and at Ferguson's trial, yet she never stated that the man accused of murder was innocent based on her own recollection of the events in question.

If Ornt did not tell Crane this exculpatory information, there could have been no

---

8. At the time of the murder, Ornt worked for a cleaning service that cleaned the *Columbia Daily Tribune* building, and on the early morning hours in question she was working at the building. Apparently immediately after the murder occurred, Ornt went outside the building to smoke and saw two individuals in the area where the victim was murdered, and Ornt then went back inside the building for help.

*Brady* material for the State to disclose to Ferguson because, as the motion court found, Ornt did not provide any exculpatory information to the State that would have assisted Ferguson at trial. For this reason, we must deny Ferguson's *Brady* claim.

■ For the first time in his reply brief, Ferguson argues that the motion court made several factual errors in its judgment that undermine its ruling. But we must reject this argument for two distinct reasons. To begin, " '[a] reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal.' " *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n. 5 (Mo.App. W.D.2009) (quoting *Kells v. Mo. Mountain Props., Inc.*, 247 S.W.3d 79, 84 n. 7 (Mo.App. S.D.2008)). " 'We do not review an assignment of error made for the first time in the reply brief.' " *Id.* (quoting *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 130 S.W.3d 573, 584–85 (Mo.App. E.D.2003)).

Even if we were to review these alleged "factual errors" contained in the motion court's judgment, Ferguson fails to cite *any* authority that any of the alleged discrepancies are a basis for relief on appeal. For example, Ferguson argues that the most blatant factual error in the motion court's judgment is the finding that Ms. Ornt testified at the evidentiary hearing that Kevin Crane, the prosecutor, showed her pictures of Ferguson and Chuck Erickson during their meeting preparing for trial, because Ornt did not so testify at the motion hearing.[9] But again Ferguson fails to cite to any authority that would support the contention that this discrepancy, by itself, is a plausible basis for relief on appeal because whether or not Crane showed Ornt photographs of Ferguson was, at most, an ancillary issue as it pertained to the critical question of whether Ornt told Crane that Ferguson and Erickson were not the individuals she saw at the scene of the crime. Put another way, the motion court could have just as easily reached the same conclusion (that Ornt did not tell Crane exculpatory statements) even had it found that Ornt testified that Crane did *not* show her photographs during their meetings.

For all of the aforementioned reasons, we conclude that Ferguson has failed to demonstrate that the motion court erred in denying Ferguson's second *Brady* claim in his motion for post-conviction relief.

Point Two is denied.

In Point Three, Ferguson argues the motion court erred in adopting, in substantial part, the State's proposed findings of fact and conclusions of law in its judgment, thereby demonstrating a lack of independent judgment in assessing the evidence and applicable law when considering his Rule 29.15 motion.

■ We do not believe Ferguson has demonstrated that he is entitled to relief in this Point Relied On. Adopting one party's proposed findings of fact and conclusions of law "has become a common practice in Missouri courtrooms and raises no constitutional problems so long as the court, after independent reflection, concurs with the contents of the proposed findings and conclusions." *Skillicorn v. State*, 22 S.W.3d 678, 690 (Mo. banc 2000). "Still, to be valid, the proposed findings of fact and conclusions of law must be supported by the evidence." *Id.* "Though drafted by another, this process makes the findings of

---

9. Ornt testified at the hearing that she saw the pictures in question on the news media and in the paper.

fact and conclusions of law those of the court." *Id.* at 690–91. "As long as the court thoughtfully and carefully considers the parties' proposed findings and agrees with the content, there is no constitutional problem with the court adopting in whole or in part the findings of fact and conclusions of law drafted by one of the parties." *State v. Kenley,* 952 S.W.2d 250, 261 (Mo. banc 1997) (citing *State v. White,* 873 S.W.2d 590, 600 (Mo. banc 1994)).

Ferguson has failed to demonstrate that the motion court's judgment was unsupported by the evidence. While the motion court did adopt a significant percentage of the State's proposed findings of fact and conclusions of law, it is undisputed that the motion court also made substantive changes that reflect that it thoughtfully and carefully considered Ferguson's claims. *Link,* 25 S.W.3d at 148.[10]

Furthermore, Ferguson makes merely conclusory assertions on appeal as it pertains to the motion court's judgment, yet he fails to illustrate how any adoption of the State's proposed findings actually prejudiced his rights in the post-conviction relief proceedings. For example, Ferguson argues on appeal that the proposed findings of fact and conclusions of law submitted by the State were not accurate, yet he does not then outline precisely how or why they were inaccurate. Ferguson does give a few examples for the first time in his reply brief, but we do not review an assignment of error made for the first time in a reply brief. *Arch Ins. Co.,* 294 S.W.3d at 524 n. 5. Even when considering these arguments that focus on the actual substance of the judgment, they are mostly

re-hashed arguments from his other points relied on in this appeal.

For these reasons, Point Three is denied.

In Point Four, Ferguson argues the motion court clearly erred in denying his post-conviction claim because his trial counsel was ineffective for failing to investigate and call multiple witnesses who would have impeached the credibility of Charles Erickson and Jerry Trump, and had his counsel called these witnesses to the stand, it would have changed the outcome at trial.

■■■ " 'To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test.' " *Glaviano v. State,* 298 S.W.3d 112, 117 (Mo.App. W.D.2009) (quoting *Zink v. State,* 278 S.W.3d 170, 175 (Mo. banc 2009)). "The movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation and that trial counsel's failure prejudiced the defendant." *Id.*

■■■ In order to satisfy the performance prong, Ferguson's burden is to "overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997). To demonstrate prejudice, Ferguson's burden is to "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability

10. For example, in its judgment the motion court added the fact that a testifying witness, Mr. Hudson, offered to engage in a drug-buy for the State. In addition, the motion court deleted the State's proposed finding that a

testifying witness, Dr. Leo, was not credible. Further, there were a number of other grammatical and syntax changes made suggesting the court made a thorough analysis and set forth its own findings and conclusions.

sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ "To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that:1) trial counsel knew or should have known of the existence of the witness, 2) the witness could be located through reasonable investigation, 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." *Hutchison v. State,* 150 S.W.3d 292, 304 (Mo. banc 2004). "Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." *Id.*

### A. Charles Erickson

■ Ferguson alleges that his trial counsel was ineffective for failing to interview and call to the stand three specific witnesses who would have impeached Charles Erickson's trial testimony. At the post-conviction relief hearing, Keith Fletcher, Jonathan James, and Eric Gathings all testified to statements Erickson made to them in an individual capacity while they were incarcerated with Erickson.[11] Because Erickson's testimony was essential to the prosecution's case against Ferguson, Ferguson argues that his trial counsel's ineffective assistance in this regard was uniquely prejudicial. We disagree.

At the post-conviction relief hearing, Keith Fletcher testified that "Erickson told him that he was not sure whether he had committed the murder" and "Fletcher also testified that Erickson stated that he had dreamed that he and Ferguson had committed the murder." Fletcher also contends that Erickson stated that he confessed to the murder merely because "he wanted to go home" and the police promised him he could go home after giving a statement, and he eventually took the plea agreement to "get it over with."

Jonathan James similarly testified that Erickson told him that "he didn't know if he had done it" and that "it was all a dream." James also testified that Erickson told him he was high on marijuana when he admitted to committing the crimes to the police, and that ultimately he "never gave a hundred percent answer if [he or Mr. Ferguson] had done it."

Finally, Eric Gathings also testified that Erickson told him that he "had a dream that him and [Ferguson] did it" and that he did not say "whether he knew if he actually committed that murder or not."

In rejecting Ferguson's claims as it pertains to *each* of these witnesses, the motion court made a specific finding and conclusion that these witnesses would not have provided a viable defense for Ferguson to the charged crimes and thus would not have changed the outcome at trial. After a careful review of the record on appeal, we conclude that the motion court did not clearly err in refusing to grant Ferguson post-conviction relief in this regard.

■ "When the testimony of the witness would only impeach the state's witnesses, relief on a claim of ineffective assistance of counsel is not warranted." *Whited v. State,* 196 S.W.3d 79, 82 (Mo. App. E.D.2006). "However, when the testimony of the witness would also negate an

11. From the record on appeal, it is apparent that Erickson allegedly made other similar statements to other, different individuals than these three men. However, because Ferguson focuses solely on these three individuals on appeal, we will similarly restrict our analysis accordingly.

element of the crime for which a movant was convicted, the testimony provides the movant with a viable defense." *Id.* "Failure to impeach a witness does not automatically entitle [Ferguson] to post-conviction relief." *State v. Hall,* 982 S.W.2d 675, 687 (Mo. banc 1998). Ferguson "must establish that the impeachment ... would have provided him with a defense to the crime of ... murder, or that it would have changed the outcome of the trial." *Id.*

Here, Ferguson has failed to demonstrate that any one of the three witnesses would have negated an element of one of the crimes he was charged with, or even provide compelling testimony that would have impeached Erickson's testimony in a *unique* fashion that was not done at trial by Ferguson's trial counsel. On cross-examination, Erickson was subjected to a lengthy and extensive cross-examination, wherein Ferguson's trial counsel was successful in illustrating that Erickson had made various prior statements that seriously undermined Erickson's credibility.

Specifically, Erickson admitted on cross-examination that from November 2, 2001, until spring of 2003, he did not have any conscious memory that he was involved in the death of Kent Heitholt. Erickson conceded on cross examination that for a period of many months after he was first investigated by the police for the murder, he stated to friends, the police, his parents, and even a nurse in the jail, that he was uncertain whether he and Ferguson had murdered the victim. On cross-examination, Erickson acknowledged that he had stated at one time or another, as it pertained to whether he and Ferguson murdered the victim, the following: "I don't even remember" the murder; that he might be "confusing [memories] with dreams"; that he was "not sure that he had been involved in the death of Mr. Heitholt"; "Like, I could just be sitting here and fabricating all of it and not know. Like, I don't know. I don't." [12]

In light of the fact that Erickson admitted at trial the statements the witnesses would testify to, Ferguson has failed to demonstrate that the three witnesses' testimony would have produced a viable defense. *Hutchison,* 150 S.W.3d at 304. Counsel was not ineffective for not putting on cumulative evidence from these other witnesses. *Goodwin v. State,* 191 S.W.3d 20, 38 (Mo. banc 2006). Their testimony would have been cumulative, and they provide no additional facts that would exculpate Ferguson. *Id.; see also Kuhlenberg v. State,* 54 S.W.3d 705, 708–09 (Mo.App. E.D.2001)("[C]ounsel's failure to call Archer was not ineffective assistance of counsel because counsel was able to obtain from the witnesses that were called most of the information movant contends Archer would have added.").[13]

Ferguson argues on appeal that the substance of Fletcher, James, and Gathings'

---

12. These are merely examples in order to illustrate the type of impeachment Erickson underwent at trial because to outline the entire line of cross-examination would be impractical in light of the fact that Erickson's cross-examination takes up over two hundred pages in the transcript.

13. Moreover, to the extent that Erickson unequivocally admitted to making the statements in question, Fletcher, James, and Gathings' testimony to the substance of Erickson's statements would be inadmissible. "To lay a proper foundation to impeach a witness with regard to a prior inconsistent statement, the witness must be provided an opportunity to refresh his or her recollection of the prior statement and then allowed to admit, deny, or explain it." *State v. Wilson,* 105 S.W.3d 576, 585 (Mo.App. S.D.2003). "If the witness unequivocally admits to the prior statements, further proof is unnecessary and the evidence is inadmissible because the witness, by his own admission, has impeached himself." *Id.*

testimony was not cumulative because the inmates' testimony—including that Erickson did not believe he had killed Heitholt, that he confessed only because he was tired of sitting at the station, and that he may have perpetrated the murder with someone else—was not otherwise presented at trial. To begin with, we must take issue with the suggestion that any of these three witnesses testified that Erickson stated that he committed the crime with someone *other* than Ferguson because no such witnesses actually testified to that fact, and therefore trial counsel could not have been ineffective for the failure to call a witness to testify to exculpatory evidence that was not adduced at the post-conviction relief hearing.[14] As it pertains to these other allegedly unique facts, "the purpose of their testimonies would have been to show" precisely that Erickson did not believe he had killed Heitholt and that he was inconsistent in his belief of this fact, a premise that was extensively and repeatedly demonstrated on cross-examination. *Goodwin*, 191 S.W.3d at 38. For all of these reasons, we find that the motion court did not err in concluding that these witnesses would not have provided a viable defense to the charged crimes.

## B. Jerry Trump

■ Ferguson further alleges that his trial counsel was ineffective for failing to interview and call to the stand Christine Varner because she would have impeached Jerry Trump's trial testimony at Ferguson's trial. Jerry Trump was working at the Tribune on the morning of the murder and came outside of the building shortly after the incident. Because Trump posi- tively identified Ferguson at trial as one of the individuals he saw outside the building that morning, Ferguson contends that his trial counsel's failure to impeach Trump's testimony with Christine Varner's testimony constituted ineffective assistance of counsel.

Ferguson argues that Varner's testimony at the post-conviction relief hearing illustrates that her testimony would have impeached Trump's testimony. Specifically, Varner testified that Trump told her right after the murder happened that, while he saw some individuals the morning in question, he couldn't recognize them at all because of the lights, and he couldn't identify anyone that would have been out of his car because of the way the lights were.

As previously stated, "[t]o prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that: 1) trial counsel knew or should have known of the existence of the witness, 2) the witness could be located through reasonable investigation, 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." *Hutchison*, 150 S.W.3d at 304.

In rejecting this claim as a basis for post-conviction relief, the motion court found that trial counsel was not ineffective in this regard because Ferguson has failed to establish that his counsel's actions were unreasonable because he has failed to demonstrate that counsel's investigation was inadequate. It was undisputed at the hearing that Varner contacted the public defender's office long after Ferguson's trial, after watching the television program

---

14. To the extent that he is referring to James's testimony (that Erickson said that he "and one other person" committed the murder), this does not establish that Erickson stated that he committed the murder with someone other than Ferguson because this "one other person" presumably was *Ferguson*. To the extent that Ferguson believes that James was told something else by Erickson, Ferguson failed to satisfy his burden in proving this fact at the post-conviction relief hearing.

*48 Hours,* and that she was not contacted prior to trial. The motion court found that "Movant does not explain or present evidence demonstrating how counsel could have known that Trump had made that statement to a random person that worked at Job Center."

Ferguson has failed to demonstrate that the above findings and conclusions of the motion court were clearly erroneous. On appeal, Ferguson contends that Varner's whereabouts and the substance of her testimony was easily discoverable in light of the fact that Varner was an employee of Trump's employer and interviewing the staffing agency about Trump would have uncovered Varner's information. But in so arguing Ferguson essentially asks this Court to disregard our standard of review. The motion court expressly concluded that Varner and Trump's conversation was random, which is a conclusion that was supported by the evidence adduced at the hearing because Varner merely worked for the company that did the payroll for Trump's employer. Ferguson cites no authority to support the proposition that trial counsel should be reasonably expected to interview all individuals that Trump may have interacted with on a "semi-regular" basis in order to discover potential impeachment material to cross-examine Trump. Indeed, not even Ferguson's post-conviction relief counsel interviewed Varner on their own initiative because it was not until Varner saw the program *48 Hours* that she belatedly decided to contact the Public Defender's office. Ultimately, the fact that Varner could not have been located through reasonable investigation is dispositive of this argument on appeal. *Hutchison,* 150 S.W.3d at 304.

For all of the aforementioned reasons, Point Four is denied.

**Conclusion**

The judgment of the circuit court, denying Ferguson's post-conviction relief motion, is hereby affirmed. That is not to say that the issues of this case do not give us pause. The sole evidence tying Ferguson to the crime was the testimony of Erickson and the identification from Trump. There is no physical evidence that ties Ferguson to this murder. However, we are mindful that Ferguson has other legal avenues to bring forth his claims of newly discovered evidence. Rule 29.15 does not provide Ferguson the relief he seeks. However, habeas corpus review is still available to him to raise the issues in the appropriate forum.

All concur.