Leroy PAULSON, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 30629.

Missouri Court of Appeals,
Southern District,
Division Two.

June 20, 2011.

Mark A. Grothoff, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Leroy Paulson ("Paulson") appeals the motion court's denial of his "Motion to Vacate, Set Aside or Correct the Judgment or Sentence" on a claim he received ineffective assistance of counsel. We affirm that denial.

## Facts and Procedural History

On March 7, 2003, Paulson was charged by felony information with the crimes of statutory rape in the first degree, in violation of section 566.032,[1] and felony statutory sodomy in the first degree, in violation of section 566.063. A bench trial was held on December 21, 2005, and Paulson was found guilty on January 12, 2006. This Court affirmed Paulson's conviction in *State v. Paulson*, 220 S.W.3d 828 (Mo.App. S.D.2007), and sets forth a more complete statement of facts in that opinion. Here, we set forth only those facts pertinent to this appeal.

E.M., who was twelve years old at the time of trial, testified Paulson began touching her "wrongfully" when she was about four years old. Paulson was the boyfriend of E.M.'s mother ("Mother") at that time and lived with them a number of years until Mother "kicked [Paulson] out for using drugs" in the fall of 2002. E.M. testified that while Mother was at work in the evening, Paulson would force her to engage in sexual acts.[2] Additionally, E.M. testified Paulson put needles in her hands and he injected her with substances that made her "feel dizzy and sick and very tired." She stated Paulson made her smoke cigarettes "[a]nd one time he had a metal pipe, and he put something in there." She stated that oftentimes when she smoked, she saw "odd shapes."

In an attempt to discredit E.M.'s testimony, Paulson offered the following evidence at trial regarding E.M.'s credibility and reputation for truth and veracity. Angela Bounds ("Ms. Bounds"), E.M.'s former school counselor, testified that in November 2002, E.M. informed Ms. Bounds

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. For example, E.M. testified Paulson "would touch [her] on [her] vagina [under her clothes with his fingers and the palm of his hand], and he'd make [her] touch him"; Paulson would "rub [her] chest" with his hand under her clothing; Paulson would insert his fingers inside her vagina; Paulson made her touch his penis "and he'd stick it inside [her] vagina"; Paulson would ejaculate inside and outside of her vagina; Paulson put his penis inside her "butt hole"; and "pretty often," Paulson made her "rub" his penis until he ejaculated. E.M. testified that on one occasion, Paulson made her "stick [a penis-shaped dildo] in his butt." E.M. also testified that Paulson "made [her] lick [his ejaculate] off of [her] hands[.]" She testified on two occasions, Paulson made her "suck on" his penis and when she tried to stop "[h]e'd hit [her] or yell at [her] or force [her] to do it." She stated she felt what he made her do "was nasty."

that in addition to being sexually abused by Paulson, she was sexually abused by "seven" other men. Micki Lane ("Ms. Lane"), a child forensic examiner at the Child Advocacy Center ("the CAC"), testified she interviewed E.M. on videotape on November 27, 2002.[3] In addition to Paulson, E.M. informed her of having been sexually abused by "nine" other males of varying ages.

Mother testified E.M. had previously informed her "the old man that lived across the street" had touched her inappropriately, but Mother stated E.M. had never before mentioned Paulson having touched her in an inappropriate manner.

Cheryl Gamache ("Ms. Gamache"), a social worker in Christian County, Missouri, testified she went to the school with Deputy Orville Choate ("Deputy Choate") of the Christian County Sheriff's Department. Ms. Gamache said that during her interview of E.M., E.M. made sexual allegations against "approximately five" people, including Paulson. After talking with E.M. at school, Ms. Gamache and Deputy Choate interviewed Mother. Ms. Gamache stated Mother told her E.M. "watches television and comes up with stories" and "had been kicked out of two Sunday school classes for telling stories and manipulation." She stated Mother mentioned "[E.M.] is very unusual, difficult, and especially challenging."

Deputy Choate testified that during the initial interview conducted with Ms. Gamache at E.M.'s school, E.M. made sexual allegations against "approximately eight" people, including Paulson. He related that

Mother had told him that E.M. "was prone to embellish."

At trial, E.M. testified she did not remember telling Ms. Bounds, Ms. Gamache, Ms. Lane and Deputy Choate that she had been abused by numerous people.

At the close of evidence, the trial court found Paulson guilty of statutory sodomy and statutory rape. He was sentenced to thirty years in the Missouri Department of Corrections on each count, with the sentences to run concurrently.

On April 24, 2007, Paulson timely filed a *pro se* motion for post-conviction relief, pursuant to Rule 29.15.[4] On July 30, 2007, appointed counsel filed an amended motion on Paulson's behalf. Paulson alleged trial counsel, Kristin Jones ("Jones") and Paul Duchscherer ("Duchscherer"), "failed to exercise the customary skill and diligence that a reasonably competent attorney would under the same or similar circumstances" by failing to call as witnesses, Haley Armstrong ("Armstrong") and Carrie Breedlove ("Breedlove"), and that this failure was prejudicial to him.

On December 28, 2009, an evidentiary hearing was held concerning Paulson's post-conviction motion. Armstrong, Breedlove, Paulson, Jones and Duchscherer all testified at the hearing.

Armstrong testified Paulson had married her mother in late summer of 2002, and she and her mother lived with Paulson after Paulson allegedly sexually abused E.M. Armstrong was approximately seven years old at the time.[5] Armstrong testi-

3. The trial court ruled the videotape of the CAC interview could not be used in the State's case-in-chief because it lacked "sufficient indicia of reliability"; however, the trial court permitted the videotape to be used by Paulson for impeachment purposes.

4. All rule references are to Missouri Court Rules (2010).

5. Armstrong testified she was about seven years old when her mother and Paulson married, but also testified she was about seven or eight years old when Paulson stopped living with them and he had lived with them for

fied that while she was living in the same house as Paulson, Paulson had not done anything sexually inappropriate or abusive. Armstrong further testified she was available and willing to testify at Paulson's trial, and if she had been called as a witness at Paulson's trial, she would have testified consistently with her hearing testimony.

Breedlove testified she previously lived with E.M. and was familiar with her reputation for truthfulness in the community. Breedlove stated E.M. had a tendency to lie. Breedlove testified E.M.'s reputation for truthfulness in the community was bad, and E.M. had a reputation for being untruthful. Breedlove further testified that had she been called as a witness at Paulson's trial, she would have testified consistently with her hearing testimony.

Paulson testified he wanted Armstrong and Breedlove called as witnesses at trial. He stated Armstrong could have established he did not do the things he was alleged to have done—that he is not a child molester. He stated Breedlove had lived with them and could have testified to E.M.'s bad reputation for truthfulness.

Jones testified the defense theory was that E.M. was a liar and the allegations she was making were not true. Jones stated Armstrong had been endorsed as a witness, but Armstrong was not called to testify because Jones had come to believe Armstrong's testimony would not be admissible. Jones also testified defense counsel never spoke with Breedlove. Jones was unsure but she thought Breedlove could not be located.

Duchscherer testified he could not recall why Armstrong or Breedlove were not called as witnesses.

about three years. Armstrong was twelve years old at the time of her testimony at the

On May 19, 2010, the motion court issued findings of fact and conclusions of law denying Paulson's motion for post-conviction relief. This appeal followed.

Paulson presents two points in this appeal, which appropriately frame the issues for our determination:

1. Did the motion court clearly err in finding trial counsel's failure to call Armstrong as a witness did not constitute ineffective assistance of counsel and prejudice Paulson?

2. Did the motion court clearly err in finding trial counsel's failure to call Breedlove as a witness did not constitute ineffective assistance of counsel and prejudice Paulson?

## Standard of Review

Our scope of review for the denial of a Rule 29.15 motion is whether the findings of fact and conclusions of law are clearly erroneous. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). A motion court's determination is clearly erroneous when the appellate court has a definite and firm impression that a mistake has been made. *Id.* Movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(i).

## Analysis

In order to prevail on a claim of ineffective assistance of counsel, movant must meet a two-prong standard. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Movant must show that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under the same or similar circumstances and that this deficiency resulted in preju-

evidentiary hearing.

dice to his defense. *Id.*; *State v. Storey,* 901 S.W.2d 886, 893 (Mo. banc 1995). It is necessary for movant to overcome the strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and the presumption that the challenged action was sound trial strategy. *State v. Kinder,* 942 S.W.2d 313, 335 (Mo. banc 1996), *cert. denied,* 522 U.S. 854, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997).

Specifically, to show ineffective assistance for failure to call a witness, movant must show: "1) trial counsel knew or should have known of the existence of the witness, 2) the witness could be located through reasonable investigation, 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." *Hutchison v. State,* 150 S.W.3d 292, 304 (Mo. banc 2004). " 'If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." ' *Worthington v. State,* 166 S.W.3d 566, 577 (Mo. banc 2005) (quoting *State v. Jones,* 885 S.W.2d 57, 58 (Mo. App. W.D.1994)).

### A. Witness Armstrong

Paulson first claims that the trial court clearly erred in finding Paulson's counsel acted as reasonably competent attorneys in not calling Armstrong to testify because Armstrong's testimony would have contradicted and called into question the allegations against Paulson. Paulson argues the testimony should have been offered to show Paulson did not abuse another little girl with whom he had lived. Regarding Armstrong's testimony, the trial court found that even if any of her testimony was admissible, there is no substantial evidence to support her testimony would have changed the outcome of the trial. In reviewing the record, we are not left with a definite and firm impression that a mistake has been made by the motion court in this finding; Armstrong's testimony that Paulson did not sexually abuse her after he left E.M.'s family did not prove Paulson did not sexually abuse E.M. and would have been inadmissible at trial.

Relevant evidence is evidence that tends to confirm or refute a fact in issue, or corroborate evidence that is relevant and pertains to the primary issue in the case. *State v. Hawkins,* 328 S.W.3d 799, 809 (Mo.App. S.D.2010). Here, Armstrong's testimony would have been irrelevant and inadmissible at trial. Armstrong could not testify how Paulson behaved around E.M., and she did not witness any of the events for which Paulson was on trial. Armstrong was only acquainted with Paulson after he stopped living with E.M.'s family and Armstrong had no knowledge of any facts relevant to the case. Evidence that Paulson did not sexually abuse another young girl was inadmissible and counsel was not ineffective for failing to present inadmissible evidence. *See Marschke v. State,* 185 S.W.3d 295, 307 (Mo.App. S.D.2006) (finding counsel was not ineffective for failing to present testimony from witnesses that they had not seen the defendant behave violently or use firearms in the past because this evidence was irrelevant and inadmissible as it concerned specific acts or conduct by the defendant rather than her reputation in the community for being peaceful or law abiding).

Further, Armstrong's testimony, even if admissible, would not have provided Paulson with a viable defense. Again, Armstrong could only testify to Paulson's behavior toward her, and not E.M. Also, there was no evidence presented at the evidentiary hearing showing Paulson had the same opportunity to abuse Armstrong

as he had with E.M.—Mother worked at night and left E.M. in Paulson's care. Thus, Paulson's argument also fails because Armstrong's testimony does not provide Paulson with a defense, and it would not have changed the outcome of the trial.

Accordingly, the motion court did not clearly err in finding trial counsel's failure to call witness Armstrong did not constitute ineffective assistance of counsel. Paulson's first point is denied.

### B. Witness Breedlove

■ Next, we determine whether the motion court clearly erred in finding trial counsel was not ineffective in its decision not to call Breedlove as a witness. Paulson specifically alleges Breedlove's testimony would have impeached E.M.'s testimony and, thus, called into question her allegations against Paulson. We disagree.

Paulson's claim fails because he did not present evidence at the evidentiary hearing showing Breedlove was available and willing to testify. Jones testified at the evidentiary hearing she believed she could not locate Breedlove. Breedlove did not testify she was available and willing to testify at Paulson's trial, but only stated if she had been called as a witness at Paulson's trial, she would have testified consistently with her hearing testimony. Breedlove was only asked whether she testified at trial, and she stated she did not. Paulson has the burden of proving his claim by the preponderance of the evidence. *Johnson v. State*, 330 S.W.3d 132, 137 (Mo.App. W.D.2010).

■ Paulson's claim also fails because he has not shown he suffered prejudice as a result of counsel's failure to call Breedlove as a witness. Had Breedlove been called as a witness, she would have testified that E.M.'s reputation for truthfulness was not good and that E.M. lied about "little things." Breedlove would have fur-

ther testified she had no indication that E.M. lied about Paulson. " 'When the testimony of the witness would only impeach the state's witnesses, relief on a claim of ineffective assistance of counsel is not warranted.' " *Ferguson v. State*, 325 S.W.3d 400, 416–17 (Mo.App. W.D.2010) (quoting *Whited v. State*, 196 S.W.3d 79, 82 (Mo. App. E.D.2006)).

Furthermore, Paulson presented substantial evidence at trial to impeach E.M.'s veracity. Ms. Gamache testified Mother told her E.M. "watches television and comes up with stories" and E.M. was "kicked out of two Sunday school classes for telling stories and manipulation." Ms. Gamache further testified Mother described E.M. as "being a difficult child, and how she liked to be the center of attention." Deputy Choate testified Mother told him E.M. "was prone to embellish" and Mother was not convinced that two of the allegations E.M. made of sexual abuse by persons other than Paulson, had happened. Additionally, multiple witnesses testified E.M. made accusations of sexual abuse against various people; while E.M. denied making such statements.

In light of this evidence already showing E.M. had a reputation for being prone to lying, Paulson cannot show a reasonable probability Breedlove's testimony would have changed the outcome of Paulson's trial. *See Ferguson*, 325 S.W.3d at 416–17 (counsel was not ineffective for failing to call three witnesses to impeach further a state's witness because the witnesses' testimony would have been cumulative to other impeachment evidence and they could not have provided additional facts exculpating the defendant).

Thus, the motion court's finding that trial counsel's failure to call Breedlove was not ineffective assistance of counsel and

was not prejudicial is not clearly erroneous.  Paulson's second point is denied.

The decision of the motion court is affirmed.

SCOTT, C.J., Concurs.

RAHMEYER, P.J., Concurs.